# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| PHYLLIS TEZLA, | : | Bankruptcy No. 08-12700DWS |
| | : | |
|     Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the Second Amended Motion to Punish Palisades Collections, LLC ("Palisades") for Contempt Pursuant to 11 U.S.C. § 362(k) ("Amended Motion"). Palisades neither answered[1] nor appeared in connection with the Amended Motion nor the Amended Motion to Punish Palisades Collections, LLC for Contempt Pursuant to 11 U.S.C. § 362(k) (the "Motion") that preceded it.[2] Based on the admissions arising from Palisades failure to answer the Amended Motion and the record of the hearing held on December 18, 2008, the Amended Motion shall be granted and relief granted as set forth below.

---

[1] Accordingly, the well pled averments of the Amended Motion are deemed admitted.

[2] At the hearing on the Motion, I advised Debtor's counsel that if she wanted punitive damages, a more particularized pleading would need to be filed and served on Palisades. The Amended Motion followed.

**BACKGROUND**

The following facts are undisputed. On April 24, 2008 Phyllis Tezla ("Debtor") filed a petition under Chapter 13. Pursuant to § 362(a) of the Bankruptcy Code, the petition effected a stay, <u>inter alia</u>, of all actions to enforce any prepetition debts against the Debtor. Debtor's Chapter 13 plan was confirmed on December 24, 2008, Doc. No. 43, and the stay remains in place.

Palisades is a collection agency presuming to collect a debt owed by Debtor to Verizon.[3] Palisades first called Debtor on or about August 1, 2008 and left word to return the call. Debtor attempted to do so but she was disconnected and her calls were not returned. Finally on September 3, 2008 she reached Palisades and orally advised the representative that she had filed for bankruptcy relief under Chapter 13. The respondent asked for her attorney's name and phone number and she complied. However, Palisades did not contact Debtor's counsel to verify the filing but rather proceeded to call Debtor each day, seven days a week, seeking to collect the debt. The calls, approximately 24 in number, were accomplished by an autodialer and computer. Once when Debtor actually reached Palisades, the caller, who spoke no English, started yelling at her, hung up and activated the automatic dialer in Spanish. Debtor's counsel has verified the identity of Palisades by calling the number on Debtor's caller ID.

---

[3] Debtor denies the existence of a debt to Verizon. Presumably for that reason, Verizon was not listed on Debtor's Schedules and did not receive notice of the bankruptcy from the court.

On September 24, 2008 the Motion was filed and served on Palisades by facsimile and regular mail. On October 23, 2008 Debtor's attorney, Lawrence Rubin, Esquire ("Rubin") spoke with Peter Fish, Esquire who purported to represent Palisades. To accommodate Rubin's request to Fish that good faith negotiations be undertaken and to allow Palisades to file a response, Rubin unilaterally continued the first hearing date. Not hearing from Fish or his client in several days, Rubin followed up on or about October 27, 2008 and was advised by Fish that he would contact his client and return with a possible resolution. On the day before the hearing, Rubin, still having heard nothing, contacted Fish again and left a voice mail reminding him of the imminent hearing and questioning him as to a possible resolution. The call was never returned; an answer was never filed and neither he nor his client appeared at the hearing. Moreover, notwithstanding the Motion and amended motion and the calls initiated by Debtor's counsel, the collection calls persisted until November 20, 2008.

Debtor has lost two days of work to secure relief in this Court from Palisade's illegal conduct. At $80 per diem, she has had actual damages of $160. The conduct has also caused her some embarrassment when a neighbor was present during one of the phone calls. She also seeks counsel fees of $3,500. Exhibit D-3.

**DISCUSSION**

Debtor seeks relief pursuant to § 362(k)(1) which provides:

Except as provided in paragraph (2) [not applicable here], "[a]n individual injured by any willful violation of a stay provided by this section [i.e., section

-3-

>362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

11 U.S.C. § 362(k)(1).[4]

As liability is only imposed for willful violations of the stay, I must consider first whether Palisades' acts can be so characterized. Willfulness in the context of a stay violation has been interpreted by the Third Circuit Court of Appeals to mean "an intentional or deliberate act done with knowledge that the act is in violation of the stay."

Id.

> A 'willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

Id. (quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)). See also Lansdale Family Restaurants, Inc. v. Weis Food Service (In re Lansdale Family Restaurants, Inc.), 977 F.2d 826 (3d Cir. 1992). As Verizon was not an acknowledged creditor, it most likely did not receive notice of the Debtor's commencement of the Chapter 13 case on April 24, 2008. However, once Debtor advised Palisades that she had filed for Chapter 13 relief in early September, Palisades was charged with knowledge of the automatic stay and any act to

---

[4] Section 362 was amended by the Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA"). The identical provision quoted above was contained in pre-BAPCPA § 362(h). Other than changing the placement of the remedy for a willful stay violation in § 362(k) and adding a new subsection (2) not relevant here, the remedy provision has not changed and cases construing former § 362(h) are applicable in enforcing new § 362(k). E.g. In re Galmore, 390 B.R. 901 n.7 (Bankr. N.D. Ind. 2008). Among those cases is the decision of the Third Circuit holding that notwithstanding the reference in § 362(h) to an individual, the section has uniformly been held to be applicable to a corporate debtor. Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Development Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

collect the debt thereafter was an intentional and therefore willful violation of the stay. Accordingly, § 362(k) is applicable and Debtor is entitled to her actual damages, including counsel fees, a bench ruling I made at the conclusion of the hearing on the Amended Motion. Debtor testified that she lost two days wages in the amount of $180 and that she suffered acute embarrassment. Since the embarrassment is not capable of fixing a value upon, I will follow a sister Pennsylvania court and take this into account in assessing punitive damages. Solfanelli v. Meridian Bank(In re Solfanelli), 206 B.R. 699, 703 (Bankr. M.D. Pa. 1996).[5]

Debtor is also entitled to recover her reasonable counsel fees as expressly authorized by § 362(k). In that regard, Debtor seeks reimbursement of counsel fees for handling this matter at $350 per hour for ten hours as reflected on a billing summary detailing the time spent by Rubin. Exhibit D-3. The $350 hourly rate is averred to be "the usual rate for bankruptcy counsel in this district in practice since 1979." Amended Motion ¶ 30. Notably it does not state that this is the rate that he charged Debtor in this case nor that it is his normal billing rate. In this case, Rubin charged Debtor a flat fee of $2,000 for 12 hours of work and reserved the right to bill additional sums for matters other than the filing of the case, preparation of the schedules and attendance at the § 341 meeting. He fails to specify what his hourly rate would be for these additional services. Doc. No. 14.[6]

---

[5] Noting its discomfort in "pulling some number out of the air" to fix the debtor's damages from the embarrassment, humiliation and mental anguish of a post-petition seizure of her bank deposits, it awarded compensatory damages of $1, attorneys' fees and $10,000 in punitive damages. Id.

[6] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991).d Cir. 1995). While a court may not take judicial notice *sua*
(continued...)

-5-

While I find that Rubin is entitled to an hourly rate higher than the rate he received under the flat fee since much of that work is done by a paralegal, I do not agree that $350 per hour is warranted nor usual. The tasks involved in prosecuting the Amended Motion are not complex and Rubin exhibited no special skill in completing same (indeed the court required Rubin to amend his Motion because it was not sufficiently pled to support his request for punitive damages). Based on my experience, $350 is on the very high end of a rate to be charged in a Chapter 13 case. I will allow Rubin's time at $250 per hour. With respect to the time allegedly expended, had Palisades appeared at the hearing, it would have had the opportunity to examine Rubin about the reasonableness of time versus the tasks performed. Nonetheless the court also has the obligation to review the request for reasonableness. I find that the billing statement reflects certain estimated times and rounded times that appear to suggest approximation of the actual time. Reviewing the entries I think the time charged is somewhat excessive and will reduce it to 8.5 hours for a charge of $2,125.

Finally, a bankruptcy court has discretion in granting or denying punitive damages. In re Stinson, 295 B.R. 109, 123 (9th Cir. BAP 2003). In exercising that discretion, a number of criteria have been employed by courts. In this district, the test has been framed by four factors: (1) the nature of the respondent's conduct; (2) the respondent's ability to pay; (3) the respondent's motives; and (4) any provocation by the debtor. In re

---

(...continued)
*sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules).

B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 487 (E.D. Pa. 1989); In re Patterson, 263 B.R. 82, 97 (Bankr. E.D. Pa. 2001). However, such awards are a response to particularly egregious conduct and are, "reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." Cochetti v.Desmond, 572 F.2d 102, 106 (3d Cir. 1978). Additionally, I must consider the respondent's ability to pay because "the primary purpose of an award of punitive damages becomes that which is sufficient to cause a change in the creditor's behavior." In re Pawlowicz, 337 B.R. 640, 648 (Bankr. N.D. Ohio 2005).

I easily find Palisades' conduct to be extremely egregious given the source and nature of the contacts – unrelenting automated phone calls at all hours and all days of the week that could not be addressed because there was no respondent to communicate with.[7] The use of technology in this manner is offensive in general and particularly so when employed as a tool of a debt collector who has a heightened duty to be aware of permissible and impermissible collection techniques. A creditor's sophistication in the credit industry has been deemed relevant in assessing punitive damages. Hodge v. The Money Shop (In re Hodge), 367 B.R. 843, 848 (Bankr. M.D. Ala. 2007) (*citing* In re Cullen, 329 B.R. 52, 58 (Bankr. N.D. Iowa 2005) (as Money Shop is in business of making consumer loans, it should be familiar with the automatic stay imposed by bankruptcy law). See also In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001).

---

[7] Debtor has not sought so I do not address the availability of damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

Yet notwithstanding the two motions filed, the two hearings held, and the telephone outreach by Debtor's counsel to Palisades' counsel, Palisades failed to react, continuing to harass Debtor well after being notified of its contemptuous actions. As stated by the Court in In re Bishop, 296 B.R. 890, 899 (Bankr. S.D. Ga. 2003):

> Worse, Bank has made no effort to defend its action, mitigate their effect or show any degree of remorse. Bank's nonchalance about protections of debtors in bankruptcy and its contempt for this Court are apparent.

See also Shade, 261 B.R. at 217 (creditor failed to respond to pleading or discuss it with debtor's counsel and ignored the notice of hearing on the Motion and only a substantial sanctions award got its attention); In re Chavis, 213 B.R. 462, 462 (Bankr. E.D. N.C. 1997) (creditor failed to respond to two motions and hearings thereon and continued collection actions after court's first order compelling a severe sanction). On the other hand, I find Debtor to have been blameless and indeed conciliatory in her counsel's attempts to find an amicable solution to the repeated stay violations.

Punitive damages are demanded for Palisades' arrogant defiance of federal bankruptcy law. In fixing an award, I have canvassed the considerable decisional law on this issue. Remedies and Damages for Violations of the Automatic Stay Provisions of the Bankruptcy Code, 153 A.L.R. Fed. 463 (1999). While the nature of the conduct, a telephone collection call, is not in and of itself as damaging as acts to seize and sell property that form the most usual basis for stay violations, the numerosity of these calls- 24 arriving each day of the week- elevates the severity of the conduct. McCurdy v. Prentice Hall, Inc., 142 B.R. 11,

12 (Bankr. D. N.H. 1992) (13 collection letters sent after petition filed, 12 after notice of bankruptcy, 9 after legal action taken). This type of incessant harassment after notice to cease, calls for a strong response even though minor actual damages have been proven.

The final consideration for determining an appropriate measure of punitive damages is the respondent's ability to pay. As noted, the award should be sufficient to command the attention of the wrongdoer and deter a repeat of the contumacious behavior. Palisades is a private company for which financial information does not appear to be publicly available. However, it is a subsidiary of Asta Funding, Inc. ("Asta"), a public company in the financial services industry, which generated approximately $52 million in net profits from July 1, 2007 through June 30, 2008, an increase of over $10 million from the prior fiscal year. Exhibits D-1 and D-2. Debtor avers that to be effective as a deterrent punitive damages in the range of $40,000 are appropriate, applying a 1% multiplier to certain Asta profits.[8] While I agree that Palisades' relationship to this profitable public company is relevant, I am not comfortable fashioning a punitive damages award as a percentage of its parent's financials. Rather I conclude from my extensive study of the decisional law that an award of $11,000 is appropriate based on the factors identified above. I conclude that adding this sum to the cost of collecting a consumer loan will detract from the profitability of the collections business. To continue practices that generate this surcharge is contrary to

---

[8] Debtor's counsel has understated the Asta income by treating the last quarter numbers as annual data. htpp//finance.yahoo.com. They were actually much greater. From his calculation, Debtor urges punitive damages of $41,610 representing 1% of what he believed were Asta's net profits.

-9-

Palisades' business interests and hopefully will deter a repetition of its willful and cavalier flaunting of the federal bankruptcy law.

## CONCLUSION

For the foregoing reasons, I find that Palisades has willfully violated the automatic stay of § 362(a). Pursuant to § 362(k), actual damages of $160, counsel fees of $2,500 and punitive damages of $11,000 are awarded to Debtor. An Order consistent with this Memorandum Opinion shall issue.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated:  January 28, 2009